**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

DOUGLAS HUNDERMAN and DOROTHY HUNDERMAN

                Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC

and

WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS SUCCESSOR TRUSTEE TO
CITIBANK, N.A., AS TRUSTEE FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST, MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2005-FF12.

and

BARRETT FRAPPIER & WEISSERMAN, LLP

                Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

        Come now Plaintiffs, Douglas Hunderman and Dorothy Hunderman and state:

**JURISDICTION**

        1.      This is an action involving a count brought under 12 U.S.C. § 2605, known as "RESPA," for actions under said section 2605 within three years of the filing of this complaint.  As such the Court has jurisdiction under 12 U.S.C. § 2614.  A count of this action is also brought under 15 U.S.C. § 1692, the Fair

Debt Collection Practices Act, and the court has jurisdiction over that claim under 15 U.S.C. Section 1692k. This action also contains allegations of violations of state law that  form part of the same case or controversy under Article III of the United States Constitution. This Court also has jurisdiction over those claims under 28 U.S.C. § 1367.

2.      Further, Plaintiffs are both Citizens of the state of Colorado. Defendant Nationstar Mortgage, LLC (hereafter "Nationstar") is a limited liability company organized and existing under the laws of the state of Delaware and having its principal place of business in Texas. Plaintiffs plead on information and belief that all members of the LLC are citizens of states other than Colorado. Defendant Wilmington Trust, N.A. (hereafter "Wilmington") is a banking institution organized and existing by federal law and having its principal place of business in Delaware. Defendant Barrett Frappier & Weisserman, LLP (hereafter "Barrett Frappier") is a Limited Liability organized under Texas law, having its principal place of business in Texas, and all of its members are citizens of states other than Colorado.  As such, this Court further has jurisdiction, in the alternative, under 28 U.S.C. § 1332.

## ALLEGATIONS COMMON TO ALL COUNTS

### Background

3.      This case is a poster child for the incompetence, non-compliance, abuses and arrogance of the American mortgage servicing industry and the law firms that serve their every whim, and how these Defendants in this case

disrupted, and have continued to disrupt, the lives of two decent and productive Colorado homeowners for years.

4.     On or about June 22, 2005, the Hundermans executed a note and deed of trust from one First Franklin. The note and deed of trust were ultimately sold to a mortgage trust known as "the First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-FF12." (hereafter "the trust").  As a result of the "Great Recession," Plaintiffs, for a time, were unable to pay the mortgage.

5.     The said loan went into default and First Franklin, as servicer, caused to be filed on behalf of the trust (with Citibank as trustee) a nonjudicial foreclosure number 2008-089 with the La Plata County public trustee, on September 23, 2008, thereby accelerating the loan.

6.     Plaintiffs applied repeatedly with First Franklin for a loan modification and went through three (3) Trial Payment Plans (TPP) with First Franklin - once at the end of 2008, another TPP in the second half of 2009, and the last during the winter of 2010.

7.     For each Trial Payment Plan, Plaintiffs successfully complied with the respective terms for each of the same; notwithstanding such compliance by Plaintiffs, First Franklin told Plaintiffs they did not qualify for a loan modification for obscure or unspecified reasons, but were encouraged to ask for permission to try another TPP.

8.     In late 2010, Plaintiffs were informed that Bank of America, N.A. had taken over the servicing of their loan.

9. Working with Housing Solutions for the Southwest (HUD certified), Plaintiffs were given a fourth TPP opportunity to qualify for a loan modification with Bank of America.

10. On February 25, 2011, Bank of America, N.A., as servicer, caused a non-judicial foreclosure to be filed with the La Plata county public trustee in number 2011-35, on behalf of the trust (with Citibank as trustee), again accelerating the loan.

11. In February of 2012, Bank of America, N.A. offered Plaintiffs a loan modification, which they accepted, and signed the new loan documents in March of 2012. At that time, Bank of America had full authority, or alternatively apparent authority, as the trust's agent, to enter and sign the agreement.

12. Modified mortgage payments were paid starting in April of 2012, however, Plaintiffs never received a countersigned copy of the modification agreement, or a single loan statement from Bank of America, N.A., nor proof that payments have been properly applied by Bank of America, N.A.; notwithstanding accepting payments. After accepting the modified payments initially, after several months, Bank of America, N.A. began refusing to accept payments and thereby prevented Plaintiffs from being able to fully perform under the initial loan modification agreement.

13. Around October of 2012, Bank of America sent to Plaintiffs new loan documents, accompanied with the demand that these new documents be signed and returned to Bank of America overnight.

14.     Upon their review of the documents, Plaintiffs determined the new documents erroneously included about $103,000.00 in excess of the prior agreement.

15.     Plaintiffs did not sign nor return the documents to Bank of America, N.A., and continued to make timely modified mortgage payments to Bank of America, N.A. based on the loan modification they signed and returned back in March of 2012.

16.     In 2012 and early 2013, Bank of America communicated with Plaintiffs and explained that, because Plaintiffs had failed to sign and return the second loan documents, Bank of America was declaring Plaintiffs in default and was proceeding with foreclosure against their property.

17.     Bank of America, N.A. sent another set of loan documents, suggesting that if Plaintiffs would sign and return the forms, the foreclosure procedure would be reversed and halted, but determining this set of loan documents had erroneously increased the loan principal by $103,000.00, without explanation, Plaintiffs did not accede to these demands. Bank of America was trying to force Plaintiffs to re-negotiate the parties complete initial modification contract.  Further, Plaintiffs had no reason to believe, and still have not been presented with an explanation, as to how this problem was anything other than a unilateral mistake by Bank of America, that has no redress.

**Defendants Enter the Picture**

18.     In late 2013 the servicing was transferred to Defendant Nationstar Mortgage, LL, that caused yet another foreclosure to be initiated, number 2015-

007, on February 6, 2015 based on the default that had existed since before the First Franklin foreclosure and acceleration of September 23, 2008. By this time the trustee of the trust was Defendant Wilmington.

19.     Yet again, working with Housing Solutions for the Southwest, Plaintiffs tried to work out their issues, this time with Nationstar.

20.     On or about January 27, 2016 Plaintiffs hired counsel. Plaintiffs were told by their counsel that although they had a valid contract that could be proven, but due to the unduly harsh Colorado Credit Agreement Statute of Frauds, which removed all exceptions based on centuries of common law and experience, and because they had no evidence of a countersigned agreement at the time, it probably could not be enforced, regardless of the persuasiveness of their evidence, absent a finding that the Colorado Credit Agreement Statute of Frauds was unconstitutional for lack of a rational basis.

21.     Even though Plaintiffs still believed their initial loan modification should still be valid, in an attempt to save their home somehow, Plaintiffs then re-applied, yet again, to Nationstar for a modification. Nationstar denied the modification. Plaintiffs appealed the denial and the appeal was denied.

19.     Thereafter, to avoid a foreclosure sale, and at the last minute while trying to work with Nationstar, Plaintiffs were forced to file a Chapter 13 bankruptcy in the District of Colorado (15-15704 MER).

**Discovery of Fraud and Concealment**

20.     In that bankruptcy, Defendant Nationstar filed a claim and a notice of mortgage payment change on or about June 9, 2017 in the bankruptcy, a copy

of which is attached and incorporated herein as "Exhibit 1".  In that filing was a fully executed copy of the initial modification agreement between Plaintiffs and Bank of America. On page 7 of 11 was the signature of Bank of America. The terms of the agreement were accurate and described the exact contract Plaintiffs claimed all along they had with Bank of America and had fully complied with until Bank of America returned months of payments properly made thereunder and then subsequently refused to accept payments except as required by the bankruptcy court. Other than the payments they accepted during the course of the bankruptcy, they were not ever allowed to make any other payments although they were willing and able to do so, further preventing performance by Plaintiffs.

### Plaintiffs Avail Themselves of RESPA'S QWR to Finally Try to Fix the Problems

21.    After Nationstar's bankruptcy court filing in their bankruptcy case, it became apparent what had happened. There was in fact a valid modification agreement, Plaintiffs had just found a countersigned copy of it, and it then was enforceable under the Colorado Credit Agreement Statute of Frauds. It also was apparent that the trust and its respective servicers had all along been preventing Plaintiffs' performance yet, at the same time, claiming they were in breach. As such, Plaintiffs had their counsel prepared, and sent a QWR to correct the problems created by the respective servicers of this loan ignoring the valid, enforceable agreement.  A copy of that QWR is attached as "Exhibit 2".

22.    Nationstar ultimately responded by sending Plaintiffs the letter attached as "Exhibit 3".

23.     In the QWR Plaintiffs called Nationstar's attention to the fact that

they had to file a bankruptcy to avoid a foreclosure sale and that:

> "In the Chapter 13 Bankruptcy Nationstar filed a claim that attached
> modification agreement that we signed but were never given a copy
> signed by Bank of America. The filed in the bankruptcy court showed that
> **Bank of America signed it in 2013** but they and you both completely
> refused to honor it. In the bankruptcy, Nationstar claimed a huge
> arrearage ($106,361.89) under that same modification agreement.
> (emphasis original letter).

24.     With respect to that agreement, Plaintiffs asked Nationstar why

they were not provided with a countersigned copy of the modification Nationstar

had filed in bankruptcy court, whether their records indicate that their payments

had ever been refused and/or returned, and if so, for what months and years?  In

the questions, it specifically asked about the document, and gave the date of its

filing of June 9, 2017 so Nationstar's required RESPA investigation could easily

locate the filed document on PACER in the bankruptcy court file.

25.     Armed with that information, the least sophisticated investigator

should have easily noticed that Nationstar's predecessor, Bank of America, had

not honored its own agreement, had sent back payments, and had refused to

accept payments all despite Bank of America's signed modification agreement,

causing the prevention of Plaintiffs' performance of their agreement, and that

there had thus been no default.

26.     The letter also asked, "What good faith basis to you have under

Colorado law for demanding the total 'arrearage' ($106,361.89) during our

Chapter 13 Bankruptcy after all that has been mishandled since 2008 including

the refusal to take our payments which prevented our performance under the

modification agreement?" Then it asked, "In all honesty, how was the servicing of our loan since 2008 anything but a literal trainwreck?"

27.     Finally the letter asked, "What do you plan to do about it so that we do not lose our house and so your trust does not get stuck with a vacant foreclosure house when it could be getting our payments every month like they are because of our bankruptcy?"

28.     In response, rather than fix any errors or try to resolve anything, Nationstar responded on November 22, 2017, that Bank of America had offered "two (2) modifications". It then stated that according to its records the modifications were not signed by either party, despite the clear existence of signed and countersigned copies by both Plaintiffs and Bank of America, filed in the public record of the bankruptcy file, by Nationstar's own attorneys.

28.     Nationstar then sidestepped the questions about the balance and the servicing claiming, "As the account is in Chapter 13 Bankruptcy, we cannot provide an arrearage amount on the account" and again noted that Nationstar was limited in information they could provide "due to the Chapter 13 Bankruptcy on the account."

29.     Nationstar further in its answer stated: "[W]e cannot attest to the servicing of Bank of America or their practices" despite the fact that Defendants were relying in the supposed arrearages from Bank of America's servicing system records to claim Plaintiffs were in default and to demand payment.

**Defendants' Actions after the RESPA Response**

30.     Thereafter, on August 18, 2018, Plaintiffs filed an action in Dallas County Texas District Court in Case No: DC-18-10891 against the Defendants. The claims included a claim for declaratory judgment to determine the extent to which payments had been excused due to Defendants' preventing Plaintiffs from performing. Defendants' response was to object to jurisdiction claiming the Texas action determined title to Colorado property in violation of Texas law. The suit was dismissed by Plaintiffs and refiled in Case No: DC-19-09043. It was then dismissed for lack of Texas jurisdiction on October 14, 2019. Defendants still, to this day, have failed to take any action to correct the status of the account, or ascertain the actual balance claimed to be due.

31.     Instead, Defendants Nationstar and Wilmington, relying on the same information from Bank of America over which they disclaimed responsibility in their QWR response, caused a non-judicial foreclosure to be filed, yet again, in La Plata County, in foreclosure number 2019-021, on June 13, 2019, still relying on the same purported default while First Franklin was the servicer. They further filed a Rule 120 motion, and caused legal process to issue thereon, in La Plata County, Case No: 2019CV30099.

32.     Plaintiffs responded to that Rule 120 proceeding, on August 5, 2019, with the same facts they referred to in their RESPA QWR letter of 2017, even referring directly to the letter in the verified response, advising how they had been prevented from performing by Defendants, that there was thus no default.

33.    Then, in late 2019 and early 2020 a new loan program began in Colorado that presented a possibility of Plaintiffs obtaining a reverse mortgage to pay off the interest of the trust. The foreclosure was put on hold for a period to explore the reverse mortgage, the reverse mortgage was approved but because there was never an agreement, or even an attempt to resolve, on the balance of the loan, closing was delayed. In addition, there were never any corrections made to the Bank of America balance to which Defendant Nationstar disclaimed responsibility in its QWR response but used as a basis for re-filing a new foreclosure.

34.    Defendants however, became impatient. By March 9, 2020 the case was coming up on a hearing on the Rule 120 motion. Plaintiffs requested an additional continuance to try to get the reverse mortgage to closing, for which an accurate payoff would be required. Defendant Wilmington's counsel (and maybe Nationstar's counsel also[1]), sent an e-mail stating: "As for continuing the hearing, my client isn't going to let me push it out any further.  If we stipulated to an Order entering (approving a foreclosure sale) but not being able to be acted on for 60 days wouldn't that work?  That should be plenty of time to get the payoff figures and the funding."

35.    Plaintiffs' counsel responded: "The problem is that they dispute the default because they were prevented from making payments. If the loan fails we

---

[1] Nationstar was the servicer at the time but it was not named in the foreclosure pleadings and Plaintiffs are not sure as to whether an attorney-client relationship existed between foreclosure counsel and Nationstar. Because Plaintiff believes there likely was an attorney-client relationship hereafter he will refer to then as "Defendant's Counsel".

do not want to agree. If we continue it and get the loan, we will NEVER have to do the 120." (emphasis original communication). Defense counsel then responded: "[M]y client wants to proceed without another delay.  If the OAS (order authorizing sale) enters and the loan is paid in full, the Order would vacated. I, unfortunately, just don't have the authority to agree to another continuance."

36.    On March 11, 2020 the Rule 120 hearing was heard in La Plata County District Court.  At the conclusion of the hearing the Court ordered the parties to submit written final arguments.

37.    Near the time the written arguments were due, Defendants' counsel in the Rule 120 sent an email stating: "As you know, we have closing arguments due to be filed tomorrow in this case.  I assume, given everything that is happening, that the Hundermans haven't secured the reverse mortgage; is that right?  Just wanted to be sure before I spend too much time on the arguments." Plaintiffs' counsel responded,

> "It is in underwriting. But in preparing my argument, I think your firm is violating 15 U.S.C. 1692(f) by pursuing this any further. I'm going to file my argument early so your firm can evaluate whether you want to parrot the servicer's instructions and risk liability or spend your time on this. We make demand that you dismiss. If you would like to talk I am available."

38.    Thereafter Plaintiffs filed and served their final argument, a copy of which is attached as "Exhibit 4" and incorporated herein. The Defendants still persisted in trying to foreclose.

39.    The state court then denied the order authorizing sale on July 7, 2020, a copy of which is attached hereto and incorporated herein as "Exhibit 5."

The grounds for denial were the same as mentioned in Plaintiffs 2017 QWR and as Plaintiffs were telling Defendants all along.

### COUNT I – RESPA – Defendant Nationstar

40.     Plaintiffs' letter marked as Exhibit 2 was a QWR as defined by 12 U.S.C. § 2605 sent to Defendant Nationstar and received by the Defendant at its designated address on November 4, 2017. The letter clearly identified Plaintiffs' loan and clearly explained wherein and why their account was in error.

41.     Defendant sent a letter to Plaintiffs which it designated as its response on November 22, 2017, attached as Exhibit 3.

42.     Defendant violated 12 U.S.C. § 2605 in one or more of the following respects.

a.      Defendant Nationstar failed to either correct their account or investigate their request as evidenced by the letter telling Plaintiffs there was no signed modification agreement when the letter conveniently pointed to a public record containing the fully executed agreement.

b.      Defendant failed to either correct their account or give the Plaintiffs either a statement of the reasons for which the servicer, Nationstar, believed the account of the Hundermans was correct, as determined by the servicer.  It was obvious from the public record of the fully executed agreement that the account was incorrect and Nationstar knew it, but instead lied to the Hundermans.

c.      Defendant failed to answer Plaintiffs' questions about the arrearage or balance on their account and failed to give an explanation of why the information requested was unavailable or could not be obtained, but instead lied

to the Hundermans stating they could not give them their own balance due to bankruptcy laws.

42.     That as a direct and proximate result of the foregoing violations, Defendant escaped handing Plaintiffs a truthful response that would have admitted facts that would have promptly ended the foreclosure if shown to the state court. Plaintiffs each suffered severe emotional distress which was for each a real injury and symptomatic as a result of Defendant Nationstar's communicating that it was going to treat Plaintiffs in default and try to take their family home despite the fact that under Colorado law, Bank of America and by extension Nationstar, had caused and continued to cause the purported default, and it continued stress Plaintiff Doug Hunderman during a serious cancer hospitalization and surgery. Further, the foreclosure's presence on the public record caused Plaintiffs humiliation and embarrassment.

WHEREFORE: Plaintiffs pray judgment against Defendant Nationstar in such sum as is just and reasonable plus a reasonable attorney's fee and their costs.

### COUNT II – FDCPA - Barrett Frappier & Weisserman, LLP

42.     Defendant Barrett Frappier & Weisserman, LLP is an entity primarily in the business of enforcing security interests in deeds of trust and mortgages. As such, it is a debt collector for purposes of 15 U.S.C. § 1692f(6).

43.     Defendant Barrett Frappier & Weisserman, LLP instituted non-judicial foreclosure against Plaintiffs' home in La Plata County in the foreclosure referred to and alleged herein.

44.    For reasons heretofore stated, the foreclosure was not permitted under the loan documents nor under Colorado law as there was no legal default. Further, Defendant left the foreclosure on the public record of the La Plata County Public Trustee for months after the state court's denial of the order authorizing sale, causing further unnecessary emotional distress, worry and embarrassment.

45.    That as a direct and proximate result of the foregoing violations, Plaintiffs each suffered humiliation by being held up to public ridicule by the Public Trustee record, severe emotional distress which was for each a real injury and symptomatic. Also, near the end, it was inflicted when Plaintiff Douglas Hunderman was fighting a serious cancer and had invasive cancer surgery. Further, they incurred legal fees to defend the Rule 120 proceeding. as a result of Defendant Barrett Frappier & Weisserman, LLP instituting the foreclosure and continuing the foreclosure when it became obvious it was wrongful under Colorado law when its client, Nationstar, had caused and purported default.

WHEREFORE: Plaintiffs pray, under 28 U.S.C.  judgment against Defendant Barrett Frappier & Weisserman, LLP in such sum as is just and reasonable plus a reasonable attorney's fee, a penalty of up to $1,000.00 and their costs.

### COUNT III – DECLARATORY JUDGMENT – Wilmington

46.    Defendant Wilmington is and was, since late 2013, the holder of the note and deed of trust on Plaintiffs' property in La Plata County.

47.     Defendant Wilmington was, since late 2013, acting through its agent, servant, and employee, Nationstar as its mortgage servicer.

48.     Defendant Wilmington, and its predecessors in interest, have engaged in such a serious, full and complete prevention of Plaintiffs' performance, failure of consideration, and noncompliance with conditions, as to excuse Plaintiffs' full performance under the agreement that has not yet been performed, or alternatively, such a prevention of performance, failure of consideration and failure of conditions as to excuse any past due performance by Plaintiffs through and including the date of judgment in this case.

WHEREFORE: Plaintiffs pray, pursuant to 28 U.S.C. § 2201, preserving their right to jury trial under F.R.C.P. 57, that the Court declare the rights of the parties as follows:

a.     Declare that the conduct of the trust's servicers excused all further performance by Plaintiffs and that the Plaintiffs have no further obligation under the note and deed of trust.

b.     Alternatively declare that Defendant's conduct  excused all performance through the date of the judgment in this case or through such other date as the evidence shall justify.

c.     Declare the amount due on the loan, if any, and declaring a reasonable payment schedule in light of Defendants' breach.

### COUNT IV – Malicious Prosecution - All Defendants

49.     All three Defendants caused process to issue in a Colorado State Court in a Rule 120 foreclosure proceeding as heretofore described herein.

50.     On July 7, 2020 the action was dismissed in Plaintiffs' favor as heretofore described herein and as reflected in Exhibit 5.

51.     Such Rule 120 process was issued maliciously and without probable cause in one or more of the following respects:

a.     It was obvious from the Plaintiffs' QWR and the public record of the signed modification referred to therein that Defendant Wilmington's predecessors had proceeded on wrong assumptions, that they had prevented Plaintiffs' performance, and that there was no default.

b.     Defendant Nationstar, as servicer for Defendant Wilmington, could not give an arrearage in the QWR response then filed this foreclosure based on that number.

c.     Defendant Nationstar stated in the QWR that it could not vouch for the servicing of Bank of America but then filed and served this process based thereon.

d.     Defendant Barrett Frappier & Weisserman, LLP were on robust notice of the reasons why foreclosure was wrongful, but proceeded anyway, once it became obvious, choosing to ask permission of its client/servicer to refrain from committing malicious prosecution.

e.     Defendants wrongfully assumed from other Colorado foreclosures that it could bury the reckless servicing in this case in a Rule 120 proceeding by arguing that it was beyond the scope of Rule 120. Thereafter, Defendants Nationstar and Barrett Frappier did exactly that by filing in the foreclosure case the final argument in Exhibit 6, attached hereto and incorporated herein.

52.     That as a direct and proximate result thereof, Plaintiffs suffered humiliation from the public record of foreclosure and excruciating emotional distress that was symptomatic and a real injury, and was inflicted at a time when Plaintiff Douglas Hunderman was fighting a serious cancer and had invasive cancer surgery. Further, they incurred legal fees to defend the Rule 120 proceeding.

WHEREFORE: Plaintiffs pray judgment against all defendants in such sum as is just and reasonable.

### COUNT V – Tortious Interference with Contract or Prospective Business Advantage - Nationstar

53.     After the receipt of the Plaintiffs' QWR it was obvious to Nationstar that any nonpayment by Plaintiffs was caused by the mishandling of the account by the trust's servicers.

54.     It was also obvious to Nationstar that the future obligations of the trust and Plaintiffs to each other were ideal for settlement, with neither side sure of the ultimate outcome of an action to declare the rights of the parties.

55.     Defendant Nationstar interfered with that highly likely settlement by simply and mechanically pushing the Plaintiffs' loan to a wrongful non-judicial foreclosure.

56.     Defendant Nationstar's interference with the settlement of this account was unjustified interference in one or more of the following respects:

a.      Defendant Nationstar had a serious conflict of interests with the trust. Nationstar stood to profit from the foreclosure and the subsequent REO

liquidation of the property and failed to act in the best or even equal interest of the trust that held the loan.

   b.   Defendant Nationstar refused to permit a mutually beneficial settlement between the trust and Plaintiffs, which would have resulted in significant loss mitigation to the trust, without its own release by Plaintiffs of all civil liability of Nationstar for its actions.

   c.   Defendant Nationstar hired Defendant Barrett, Frappier and Weisserman, who it knew it could control, by its repeated referrals of highly profitable foreclosure business,  to "represent" the trust and move rigorously to foreclosure, while refusing to settle the dispute over the balance, with full loyalty to Defendant Nationstar rather than the trust.

   57.   As a direct result thereof. Plaintiffs have lived under a constant threat of foreclosure, after the modification of their loan in 2012 until present, in a case that should have been settled. That as a direct and proximate result thereof, Plaintiffs suffered excruciating emotional distress that was symptomatic and a real injury, and was inflicted at a time when Plaintiff Douglas Hunderman was fighting a serious cancer and had invasive cancer surgery. Further, they incurred legal fees to defend the Rule 120 proceeding.

   WHEREFORE: Plaintiffs pray judgment against Defendant Nationstar in such sum as is just and reasonable plus their costs.

   **COUNT VI - Intentional Infliction of Emotional Distress - Nationstar**

53.     The conduct of the Defendant Nationstar as alleged herein was outrageous, atrocious and beyond all bounds of human decency in one or more of the following respects:

a.     The Defendants persisted, for years, trying to take the Plaintiffs' home by foreclosure, well knowing that the problems with the loan were caused by the respective servicers having prevented Plaintiffs from performing, and well knowing foreclosure was wrongful under the law and the agreement, and without attempting to solve the situation thereby created, or even recalculate the correct balance under the signed agreement, exhibit 1.

b.     By trying for years to take Plaintiffs' home  in retaliation for Plaintiffs' refusal to execute a second modification, much more favorable to the lender, because of the prior servicer's apparent unilateral, and not mutual, mistake", when they were not obligated to do so, out of arrogance that the laws on unilateral mistakes only apply to borrowers and not lenders.

c.     By tormenting the Plaintiffs, with repeated foreclosures, for well over six years, while trying to bury the monumental servicing errors made on this loan over a period in excess of a decade, in a limited Rule 120 foreclosure proceeding.

54.     That as a direct and proximate result thereof, Plaintiffs suffered excruciating emotional distress that was symptomatic and a real injury, and was inflicted over a very extended period of time.  Also, near the end, it was inflicted when Plaintiff Douglas Hunderman was fighting a serious cancer and had

invasive cancer surgery. Further, they incurred legal fees to defend the Rule 120 proceeding.

55.     Defendant knew its course of action, and the individual acts therein, were substantially certain to cause this high degree of serious emotional distress to Plaintiffs.

WHEREFORE: Plaintiffs pray judgment against Defendant Nationstar in such sum as is just and proper and their costs.

**PLAINTIFFS EACH DEMAND TRIAL BY JURY**

*/s/ Blair K. Drazic*
Blair K. Drazic
1194 Rance Canyon Dr.
Unit 6, Ste 16
Loma, CO 81524
Phone 970-623-1193
Fax 888-858-0992
E-mail: blairdrazic@gmail.com