IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03438-DDD-NRN

DOUGLAS HUNDERMAN and DOROTHY HUNDERMAN

       Plaintiffs,

v.

NATIONSTAR MORTGAGE, LLC

and

WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS SUCCESSOR TRUSTEE TO
CITIBANK, N.A., AS TRUSTEE FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST, MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2005-FF12.

and

BARRETT FRAPPIER & WEISSERMAN, LLP

       Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT BARRETT, FRAPPIER &
WEISSERMAN'S MOTION TO DISMISS
(Doc. 21 Filed 2/23/21)**

---

### Introduction

BFW is a law firm, charged by law, with knowing when their clients claims are frivolous or lacking substantial basis. C.R.C.P. 11, F.R.C.P. 11. This is especially critical when engaging in conduct such as taking family homes. That is also likely why Congress made foreclosure lawyers debt collectors for purposes of 15 U.S.C. 1692f(6). *See, Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035-38 (2019). But too many

1

foreclosure lawyers, likely influenced by the lucrative nature of repeat foreclosure business, will not tell their clients "no" when they do not have a foreclosure case, becoming industry "yes men." That is why BFW is a defendant in this case.

Although BFW came in late in the loan, the record by that point was disgraceful. Plaintiffs' loan was modified by Bank of America, at the latest, on June 18, 2013, seven and one half years ago. (Comp. Ex. 1). For some reason, Bank of America did not send the Hundermans a countersigned agreement. (Comp. ¶ 12). What it did do, was accept their modified payments for many months, then returned them and refused to accept further payments. (Comp. ¶ 12). The reason for refusing the payments was that Bank of America had made a "mistake" (obviously a nonredressable unilateral mistake) in the modification documents and it demanded that Plaintiffs execute a whole new set with an additional $103,000.00 in the balance. (Comp. ¶¶12, 13, 14). Then, the servicing was transferred to Nationstar in late 2013. (Comp. ¶ 18).

Nationstar continued to ignore the modification and claimed Plaintiffs to be in "default".  Because Plaintiffs did not at that time have a signed copy of the modification, they could not then *enforce* it. C.R.S. 38-10-126 (Comp. ¶ 20). After trying again for a modification with Nationstar they were forced into Chapter 13 Bankruptcy to save their home. (Comp. ¶¶ 20-22). Then, in the bankruptcy, Nationstar filed the **<u>original countersigned</u>** Bank of America modification agreement in the case. (Comp. ¶ 23).

Several things then became apparent. First, Plaintiffs had a completed, signed modification contract with Bank of America. Second, they had timely performed by making their payments until Bank of America prevented the Hundermans from complying with their obligations, and third, Nationstar continued to prevent their

2

performance. One contracting party preventing the other's performance excuses non-performance by the other party under basic contract law, including Colorado law. *Jacobs v. Jones*, 423 P.2d 321, 161 Colo. 505 (Colo., 1967), C.P.I 30.24.[1] Most interesting is that the facts giving rise to liability of Nationstar had, by this time, *not yet begun*. By that point, Nationstar had done nothing wrong. But Nationstar's obstinate refusal to see a problem after repeated robust notice, and aggressively trying to foreclose on the victims, is truly outrageous, and BFW should have seen that.

Faced with the years of servicer incompetence and blundering, Plaintiffs counsel prepared a QWR under RESPA hoping that Defendants would just fix the problem (Comp. Ex. 2). It fully outlined the mistakes and problems caused by its predecessor in interest and also by Nationstar itself. At this point Nationstar chose the all too common route of many servicers confronted with prior serious servicing mistakes; it lied in its QWR response and put the Hundermans in foreclosure, regurgitating the Bank of America company line on what happened, despite a clear contradiction in the fully signed modification documents Nationstar had itself filed in the bankruptcy. (Comp. Ex. 1,2,3).

During the new foreclosure, Plaintiffs' counsel (Defense counsel in that case), warned BFW multiple times that the foreclosure was improper under Colorado Contract law, but Defendant insisted with going to a hearing on the Rule 120 action in state Court.

---

[1] "30:24 DEFENSE — INDUCING A BREACH BY WORDS OR CONDUCT
The defendant, *(name)*, is not legally responsible to the plaintiff, *(name)*, on the plaintiff's claim of breach of contract if the affirmative defense of inducing a breach of contract is proved. This affirmative defense is proved if you find both of the following:
1. By words or conduct, or both, the plaintiff caused the defendant not to perform (his) (her) (its) obligation as required by the (claimed) contract; and
2. The plaintiff actually knew, or knew there was a substantial likelihood, (his) (her) words or conduct, or both, would have that result.

(Comp. ¶¶ 37,38,39). Prior to the due date of the written final arguments in the Rule 120, and after the evidentiary hearing, Plaintiffs counsel *yet again* warned BFW of the frivolous nature of the foreclosure and asked them to stop. (Comp. ¶¶ 41,42). When they refused, after "checking with their client" as usual, the Plaintiffs' final argument was then filed, completely outlining what Plaintiffs had been telling Nationstar since the QWR, well over two years before, and BFW for months. (Comp. Ex. 4). The state court then ruled in favor of the Hundermans for the same obvious reason. (Comp. Ex. 5).

All along in the foreclosure case, Plaintiff had been trying to reach an agreement with the trust to resolve the issues caused by the prevention of Plaintiffs' performance. While the prevention was clear, the *exact* remedy was not. Defendants flat refused to negotiate and continued foreclosure, except for giving Plaintiffs a few continuances to try to refinance the amount *it claimed* was the balance. While Plaintiff does not know at this time why, and will need discovery to find out, they plead that Nationstar interfered with settlement and their performance, and pushed the wrongful foreclosure for its own adjenda, for the same improper reasons as do many servicers as listed in the comprehensive article *Mortgage Servicing*, Letvin, Twomey, 28 Yale Journal on Regulation 1 (Winter 2011). Barrett Frappier avidly aided them, likely because of the money its Nationstar relationship generated, despite its lack of a legal basis.

## ARGUMENT

**I.   The Amended Complaint sufficiently alleges any action by BFW that is prohibited by § 1692f(6).**

Defendant's apparently makes no statement pursuant to DDD Civ. P.S. III(D)(1). Defendant argues that foreclosure is not covered by 15 U.S.C. 1692f(6).

Response: DISPUTED: Plaintiffs plead sufficient facts to make a case. ¶¶

4

3-42 plead in painstaking detail how Nationstar's prevention of performance foreclosed its right to possession of the property and ¶¶ 48-51 show how BFW put the Hundermans in foreclosure and continued to pursue it despite being put on robust notice of the problems with its case. ¶¶ 11,12,16,23,24,36,38,39,41,42.

Defendant makes a unique argument for why it is not liable, without the benefit of any case law to back it up. It claims that since 15 U.S.C. § 1992f(6) states that it cannot take any unconscionable action to collect a debt, including:

> **(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> **(A)** there is no present right to possession of the property
> claimed as collateral through an enforceable security
> interest;

and that that it is not liable for instituting foreclosure as the foreclosure itself does not dispossess the owner, it only effects title.

In *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029, 203 L.Ed.2d 390 (2019) the Supreme Court considered in detail the potential liability of foreclosure lawyers under the FDCPA in ***Colorado** Rule 120 foreclosures.* It began by looking at the definitions of the terms "debt" and "debt collector" in the act. 15 U.S.C. §1692a, defines a "debt" as:

> *"*[A]ny obligation or alleged obligation of a consumer *to pay money* arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." § 1692a(5).

The Court then noted that the statute has the following two definitions of the term "debt collector." 15 U.S.C. . §1692a(6) states:

> **"(6)**The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process

5

> of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

At 132 S.Ct. 1036 the *Obduskey* Court states:

> *"First*, and most decisive, is the text of the Act itself. As a preliminary matter, we concede that **if the FDCPA contained *only* the primary definition**, a business engaged in nonjudicial foreclosure proceedings **would qualify as a debt collector for all purposes**. We have explained that a home loan is an obligation to pay money, and the purpose of a mortgage is to secure that obligation. See *supra*, at ——. Foreclosure, in turn, is 'the process in which property securing a mortgage is sold to pay off the loan balance due.' 2 Dunaway § 15:1. In other words, **foreclosure is a means of collecting a debt**. And a business pursuing nonjudicial foreclosures would, under the capacious language of the Act's primary definition, be one that 'regularly collects or attempts to collect, directly or indirectly, debts.' § 1692a(6). (emphasis added).

The Dilemma for the Court in *Obduskey* was that if foreclosure lawyers were debt collectors for all purposes, then the second definition for security interest enforcers is surplusage in the FDCPA and a Court will not interpret terms to be surplusage. Thus, if Defendant were correct, it undermines the whole basis of *Obduskey* exempting any activities of foreclosures because, but for that, a foreclosure law firm "would qualify" as debt collectors **for all purposes**. Plaintiff asserts that *Obduskey* is thus binding authority.

There is a secondary reason why the motion should be denied. Discovery will likely demonstrate that this action to take tite, universally leads to the homeowner being dispossessed. Plaintiff will need discovery on the letters BFW sent to homeowners by promptly after they obtain "title" for the foreclosing lender, and how often they plead in state court that "title" obtained by non-judicial means is the only necessary element of an FED eviction case. The statute makes it a violation to *threaten* action action to dispossess. If filing for foreclosure does not do at least that, what would?

6

Most jurors know what foreclosure really means; you loose your home. And in Colorado today, that is the natural and probable consequence of losing your title in non-judicial foreclosure.

## II.  The Amended Complaint Properly Alleges the Element of Termination in Plaintiffs' and Malice in the Malicious Prosecution Count.

Defendant's makes no specific statement pursuant to DDD Civ. P.S. III(D)(1) as to any element but ther are obviously arguing the failure to allege three separate elements, favorable termination, lack of probable cause and malice.

RESPONSE:   DISPUTED 1. Plaintiff pleads termination in ¶¶ 43, Ex. 5. Plaintiff pleads lack of probable cause in ¶¶ 11,12,16,23,36,39,41. Plaitiff pleads malice in  ¶¶ 11,12,16,23,36,39,41.

### Termination - Colorado Law is Fairly Clear- A ruling on the Merits is the Test, not Ultimate Finality

This argument is largely taken from Plaintiffs' response to Defendant Nationstar's identical argument.  Defendant opines that since the Rule 120 was "dismissed without prejudice", the action was not dismissed in Plaintiffs' favor as contemplated by Colorado malicious prosecution law. Plaintiffs will quote the Colorado Supreme Court. In *Hewitt v. Rice*, 119 P.3d 541, 544 (Colo. 2005) the Court stated:

> "To be terminated in favor of the malicious prosecution plaintiff, the prior proceedings must be dismissed **on the merits**. *See Walford, supra.*
>
> To show a termination in one's favor, a plaintiff must prove that the court passed on the merits of the charge or claim against him in such circumstances **as to show one's innocence or nonliability, or show that the proceedings were terminated or abandoned at the instance of the defendant in circumstances that fairly imply the plaintiff's innocence**." (emphasis added).

That is *exactly* what happened here, and in the same way Plaintiff had been warning Nationstar for over two years and BFW for almost a year would happen.

In *Hewitt,* at 412 the Colorado Supreme Court recognized as authoritative, *Walford v. Blinder, Robinson & Co.,* 793 P.2d 620 (Colo.App. 1990). *Wolford* was a malicious procsecution case arising from arbitration. It too involved no final, unappealable judgment because, as here, arbitration does not provide for it. The jury in the malicious prosecution case found Blinder and Dahl (defendants, plaintiffs in the arbitration) liable and assessed against them a total of $1,450,000 in compensatory and $3,050,000 in punitive damages. In response to post-trial motions, the trial court approved all compensatory damages and the $50,000 punitive damages award against defendant Dahl. However, concluding that the $3,000,000 punitive damages award against the company was out of proportion to its fault, the court remitted it to $200,000.

The Court of Appeals, in affirming everything except the remittitur, stated at 624:

> "There is no suggestion in the orders or the record that any of the dismissals were not on the merits. Therefore, the trial court was correct in concluding that the prior proceedings terminated in favor of plaintiffs. See *Abbott v. United Venture Capital*, 718 F.Supp. 828 (D.Nev.1989) (**voluntary dismissal without prejudice may constitute a "favorable termination"**); *Duplain v. Meyers, Bianchi, McConnell & Mallon*, 206 Cal.App.3d 1272, 254 Cal.Rptr. 163 (2d Dist.1988) ("**so long as freedom from liability is indicated**, a termination without a trial on the merits may be a favorable termination")."

In the underlying Rule 120 in this case, "freedom of liability" was clear; the Court could not find even "probable cause" that Plaintiffs were in default. That is why the state judge refused to allow the foreclosure.

**The Application of the Merits Rule is Important in Foreclosure Cases**

*Wolford* stated at 623 regarding the purpose of the tort of nalicious prosecution:

> "The purposes of the cause of action are: "to recompense a defendant sued in a malicious and baseless legal action for: (1) his attorney fees; (2) his costs; (3) **his psychic damage** from the shock of the unfounded allegations in the pleadings; and (4) the loss of his reputation in the community as a result of the filing and

8

>notoriety of the base allegations in the pleadings which are public records." (emphasis added).

This aptly fits what happened here. The servicer was on robust notice that there was no legal default because Bank of America had caused the Hundermans to get hopelessly behind despite that they were ready, willing and able to pay. The emotional damage from fending off a baseless foreclosures is excruciating, especially when the servicer hires lawyers like BTW that are like "talking to the wall". Moreover, many servicers in Colorado are counting on the state judges rubber stamping the foreclosures in the Rule 120 proceeding, as if Articles III and VI of the Colorado Constitution vest the judicial power of the state in what they believe are all powerful "qualified holders" under C.R.S. § 38-38-100.3(20) and their servicers in foreclosure matters. The state judge in this case deserves credit for her careful attention to the facts and the law in the state foreclosure proceeding; it often does not happen in Rule 120 cases, even when the defense is as obvious as this one.

Defendant urges finality, not otherwise required as an element of malicious prosecution in any reported case, that would really apply just for the qualified holders in Rule 120 proceedings. It is vital that these foreclosing entities be held accountable when they file these a malicious and baseless legal actions. In fact, without adequate sanction, there is nothing stopping Defendants from filing *more* baseless foreclosures, over and over, as to these Plaintiffs, hoping to finally draw an industry friendly judge or a judge that unduly limits the "scope" of Rule 120 as servicers universally argue.

### The Defendant has no "Duty" to File a Frivolous Case

Defendant BFW sets forth in a separate heading "There is no dispute that there was a dispute." Defendant is vastly incorrect and, as licensed attorneys, should know it.

9

Defendant instituted a Rule 120 foreclosure well knowing that there was an agreement signed by **both** Bank of America and the Hundermans, and that both it and its predecessor sent payments back and/or refused to accept them. The fully signed agreement was filed by Nationstar in the U.S. Bankruptcy Court in Colorado in Case No: 16-15704-MER. It is quite ironic that BFW brings up the Colorado Credit Agreement Statute of Frauds because it *does* apply in this case.  It actually precludes Defendants, who want to claim an unsigned agreement is what the parties intended or that Bank of America somehow did not agree to the written agreement that bears its signature.

There was **no dispute** about the following. 1. Both the bank and the Hundermans signed the public record agreement, 2. Defendant Nationstar filed it in the bankruptcy court seeking its recognition in setting payments, 3. The Hundermanms made timely payments for months, 4. The bank accepted those payments for months, 5. The bank sent those payments back months later and 5. The banks refused further payments except as required by the bankruptcy court. In Colorado, when one contracting party prevents the other party's performance, it cannot rely on that performance as a default. *Jacobs v. Jones*, 423 P.2d 321, 161 Colo. 505 (Colo., 1967), C.J.A. 30:24 DEFENSE — INDUCING A BREACH BY WORDS OR CONDUCT. Yet these Defendants persisted in pushing foreclosure based on a purported "default" that was not just induced but entirely caused by Nationstar and its predecessor. Any reasonable attorney should have known there was no right to a non-judicial, Rule 120 foreclosure, and no plausible argument can be made for one.

Defendant tries to argue its way out of this spot by claiming that since Bank of America did not send the signed modification agreement, there was no acceptance and no

10

modification contract. This is nonsense. Defendant argues:"If an offer requires that acceptance be made in writing, no other form of acceptance can be made. *Union Interchange, Inc. v Sierota*, 355 P.2d 1089, 1091 (Colo. 1960)." (Motion at 12). Defendant is correct, but *this* modifiocation agreement nowhere requires that acceptance be in writing. (Comp. Ex. 1). While it may need to be in writing to be enforced under the statute of frauds, it does not concern contract formation. Defendant cites *Nations Enterprises, Inc. v Process Equip. Co.*, 40 Colo. App. 390, 579 P.2d 665 (Colo. App. 1978) as an example. In that case, there was a question as to whether there was a contract formed. Nations had sent Process a purchase order stating:

> "'Execute acceptance (blue) and return within ten (10) days after receipt of same. No payment, either partial or final, will be made until the acceptance copy has been executed and returned.'
> The acceptance copy referred to in paragraph 18 of the purchase order contained the following notation:
> 'NOTE: THIS ORDER IS NOT VALID UNTIL ACCEPTANCE COPY SHOWING SHIPPING DATE IS RECEIVED BY THIS OFFICE..'". *Nations Enterprises* at 657. (emphasis in the opinion and likely the quoted document.)

Process did not execute nor send the purchase order. All the case stood for was that the contract could only be accepted by sending the signed writing which also must be "RECEIVED BY THIS OFFICE". The contract in this case had no such provision requiring that kind of acceptance.

Defendant's own motion states at 12: "Acceptance is words or conduct that, when objectively viewed, manifests an intent to accept the offer. *Scoular Co. v. Denney*, 151 P.3d 615, 619 (Colo. App. 2006)." Here the Hundermans signed and sent back the agreement and Bank of America accepted payments for months. Then Nationstar filed the agreement in court, as proponent of its validity, to set Plaintiffs' bankruptcy plan payments. They now claim it invalid. Even if that contract law point were correct, which

11

it is not, Nationstar was barred from complaining here that there was no contract by judicial estoppel after filing it to set payments in the bankruptcy court. *Eastman v. Union Pacific R.Co.*, 493 F.3d 1151 (10th Cir. 2007).

Defendant argues that: "Accordingly, when the Hundermans signed the first proposed modification, they made an offer to the lender." (Motion at 12) but cite no authority. Apparently its "authority" is an amorphous proposition that this is how banks "do" modifications. But *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) totally dispels that. The issue turns on the language and facts of each individual contract and its terms. Defendant points to nothing that supports that "sending an unsigned agreement" is not an offer, accepted by signing it and returning it. Even if it were a mere solicitation for an offer, the bank accepted it by a course of performance and at least by filing the agreement as its proponent in a judicial proceeding. Defendant is confusing acceptance with enforceability under the statute of frauds. This was, quite simply, a unilateral mistake by Bank of America followed by bullying, self-help efforts to coerce the Hundermans to change the agreement.

Plaintiff is sensitive to the argument that BFW needed to make all reasonable arguments for their clients even when, as Defendant argues, "'[T]he lawyer believes the client's position ultimately will not prevail.' Colo. R. Prof. Cond. 3.1 Note 2." (Motion at 11). Plaintiff will go one step further. It is a First Amendment violation for a court to retaliate against a reasonable position taken by an attorney, even if he later proves to be wrong. *Be & K Constr. Co. v. Nlrb*, 536 U.S. 516 (2002). But the position taken by Nationstar was not reasonable or in any way supported by the law.

12

BFW brings up the code of ethics. Defendant should consider Colo. R. Prof'l. Cond. 1.7 on conflicting interests. A reasonable jury will likely see that Defendant BFW was not really worried about "representing its client" as it claims. In fact its *real* client was *supposed* to be Wilmington Trust, N.A. as trustee for a First Franklin mortgage trust. The discovery will likely show that foreclosure was bad for that actual client. The Hundermans were ready, willing and able to pay what was actually due under the law and the contract. *See Mortgage Servicing, supra.* The issues should have been settled and payments resumed. BFW was worried instead about its lucrative income stream from Nationstar, located 12 miles across Dallas from the BFW home office, likely for conducting foreclosures and evictions in the six states served by the BDF Law Group (BFW's parent). In fact, Plaintiffs plead in ¶ 62 that Nationstar had a conflict of interests with the trust. Discovery will show how much money BFW was making from, Nationstar, and that it had a strong motive to file and pursue this frivolous foreclosure and not confront a lucrative client with the truth.

## Conclusion

The motion should be denied.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

>*/s/ Blair K. Drazic*
>Blair K. Drazic
>1194 Rance Canyon Dr.
>Loma, CO 81524
>Phone 970-623-1193
>Fax 888-858-0992
>E-mail: blairdrazic@gmail.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing was sent to counsel for Defendant via the ECF system.

*/s/ Blair K. Drazic*

14